ESTATE OF BERNARD SHANLEY, complainant,

*v.*

FIDELITY UNION TRUST COMPANY, defendant.

[Decided August 1st, 1927.]

Trusts—Trustee Appointed by This Court Holds Securities Which it deems it wise to Sell—Wards do Not Want Them Sold—Certain Directors of Trustee, a Corporation, Also are Directors of Corporation Which Proposes to Buy—Trustee Expresses Fear of Liability to Infant Wards Unless Indemnified—Held, Trustee May Shift Responsibility to Court by Asking Instructions.

*Mr. Thomas G. Haight,* for the complainant.

*Mr. Louis Hood,* for the defendant.

BACKES, V. C.

Bernard Shanley, deceased, left his estate in trust for his widow and three children during the widow's lifetime, the principal to be divided among the children at her death. The Fidelity Union Trust Company is the substituted trustee appointed by this court. Two millions and more dollars of the securities of the estate are in capital stock of gas companies, leased to the Public Service Company upon rentals that assure substantial dividends. The Public Service Company holds a controlling interest of the capital stock of most of these companies and intends to merge them into the Public Service Company, obviously, to get rid of the leases, and to that end has offered to the stockholders of the gas companies, in exchange for their shares, certain securities of the Public Service Company, or to purchase them outright at figures fixed by the Public Service Company. The Fidelity Union company, the trustee, threatens to sell the Shanley stock. More than two-thirds in interest of the Shanley estate

object. They do not want their securities disturbed—at all events, not at the prices offered. Some of the directors of the Fidelity Union Trust Company, who favor the sale, are also directors of the Public Service Company. The trust company is its financial agent. Upon the filing of the bill a restraint issued and the trust company was ordered to show cause why it should not be restrained until final hearing from making the sale. After argument, Vice-Chancellor Backes stated:

The Court—Our trustee is not possessed of an independent and impartial judgment as to the advisability of selling the stock, and, if it be advisable, at what price. A half dozen or more members of its board of directors are directors of the Public Service Company. They represent both buyer and seller. As stockholders of the Public Service Company they have a pecuniary interest in the sale. It may be slight, but that is unimportant. They are our trustee and the law demands of trustees the utmost fidelity. It does not tolerate personal dealing with the trust estate nor permit the making of penny's profit. The rule is grounded in sound morals and is reflected in the supplicating words of the Lord's prayer, "Lead us not into temptation." This is not an imputation upon the motives of the directorate of our trustee, but a simple statement of an elemental doctrine of the obligations of trustees. Further, these directors of our trustee owe a corresponding duty of loyalty to the Public Service Company, of which they are also trustees—directors are trustees. A trustee cannot serve two masters, with sharply conflicting interests, equally well. It has been tried before. It cannot be done. A simple illustration: The directors of our trustee are in conscience bound to consider only the welfare of our wards and strive for the best price obtainable; as directors of the Public Service Company their duty is no less to secure the most favorable terms. The true balance is infinite. Trustees are not privileged to experiment with it. In the dilemma in which it found itself the course open to our trustees was to apply to the court for instructions, not to compel our wards to appeal for protection.

Now, as to the merits: Our wards complain that the sale of their stock and the conversion into money, even though the price be fair, will result in great pecuniary loss to them through the cost of reinvestment; the profit income tax to be paid to the federal government, and the likely depreciation in income on the new investments, and also that the character of their securities will suffer in the reinvestment. Our trustee answers that the market for the stock is presently favorable, the offer is advantageous, and that it is better that our wards' securities be diversified; that it is unwise to carry too many eggs in the same basket. To this our wards reply that they do not want a market; that their securities were the investments of their testator, are gilt edge and difficult to duplicate; that they are content and want them retained. Our trustee should not be unmindful that the securities belong to our wards, not to our trustees, and that their wish should be our trustee's demand. And our trustee is advised that is the court's command until the final hearing.

Our trustee expresses fear of liability to our infant wards unless the bid be accepted, and offers to refrain from selling if indemnified. Our trustee, apparently, is not alarmed over liability for selling the stock against the protest of a large majority of our wards, and without indemnity against personal loss. The stand is inconsistent. The trustee may shift the responsibility to the court by asking instructions.